UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 10-10-DLB-JGW

RUBY SCHEFFEY, Individually and as Administratrix
of Estate of Leroy Hughes                                                            PLAINTIFF

VS.                 **MEMORANDUM OPINION AND ORDER**

AMERICAN GENERAL LIFE AND ACCIDENT
INSURANCE COMPANY                                                           DEFENDANT

\* \* \* \* \* \* \* \* \* \*

Plaintiff Ruby Scheffey, Individually and as Administratrix of the Estate of Leroy Hughes, has filed breach of contract and bad faith claims arising from Defendant American General Life and Accident Insurance Company's refusal to pay accidental death benefits upon the death of the insured, Mr. Leroy Hughes.

This matter is presently before the Court on Defendant's Motion for Summary Judgment (Doc. # 25). The motion has been fully briefed (Docs. # 25-1, 34, 35), and is now ripe for review.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 3, 2008, at approximately 11:08 a.m., police from Covington Police Department were dispatched to Jefferson Avenue in Covington, Kentucky, after receiving a report that a subject was armed with a gun. The subject was Mr. Leroy Hughes, who is now deceased. The parties offer conflicting versions of what subsequently occurred.

1

The Covington Police Department offers the following narrative. When officers arrived at the corner of 19th Street and Jefferson Street, they identified Mr. Hughes as the suspect and commanded that he get on the ground. Mr. Hughes failed to comply with the officers' repeated commands. Mr. Hughes then said that he was leaving and stepped off the curb towards one of the responding officers "in a threatening manner." In response to the perceived threat, another officer deployed his Taser multiple times against Mr. Hughes. After gaining compliance, officers placed Mr. Hughes into custody and searched his person. Their search revealed that Mr. Hughes was carrying a concealed 9mm handgun. Unfortunately, Mr. Hughes passed away shortly thereafter.

Plaintiff offers an entirely different version of Mr. Hughes's arrest. According to Plaintiff, police drove past Mr. Hughes three different times before they were able to identify him as a potential suspect. Mr. Hughes was directed to toss his weapon and ammunition to the side, to which he readily complied. However, police thereafter deployed a Taser against Mr. Hughes four separate times. Plaintiff states that witnesses indicated that Mr. Hughes was compliant at all times during his interaction with the police, suggesting that the actions of the police were unwarranted.

At the request of the Kenton County Coroner, Dr. Charles Stephens examined Mr. Hughes's body at the Medical Examiner's Office of Northern Kentucky, St. Luke Hospital East, Ft. Thomas, Kentucky. Dr. Stephens concluded that:

> Death, in my judgment, is due to a cardiac event, due to myocardial hypertrophy and coronary atherosclerosis. The pattern of circumstances with contributing morbid obesity and hypertrophic heart disease, and the use of electrical stun devices suggests that this death could be assigned to the excited delerium syndrome.

(Doc. # 25-3).

Plaintiff's expert, Dr. Robert G. Schneider, offered a slightly different cause of death. In Dr. Schneider's opinion, Mr. Hughes's "death was caused by repeated simultaneous and cumulative electric shocks delivered by Taser devices . . . , which caused a lethal arrhythmia." (Doc. # 25-7). Dr. Schneider's opinion does not suggest that morbid obesity or hypertrophic heart disease contributed to Mr. Hughes's death. (*See id.*).

At the time of his death, Mr. Hughes owned two insurance policies issued by Defendant. Under one policy, Mr. Hughes had a $5,000 whole life benefit with a $5,000 accidental death benefit rider. The accidental death benefit rider would not be paid if "death results directly or indirectly, wholly or partially, from . . . the intentional act of another." (Doc. # 25-5) (internal references omitted). Under the second policy, Mr. Hughes held a $30,000 accidental death benefit. The policy excludes payment if::

> accidental injury or any loss caused or result[ed] in whole or in part by
> ...
> (d) the Insured Person's engaging in an illegal activity or occupation; or
> ...
> (l) any loss directly or indirectly resulting from or contributed to by a cause other than an Accidental Injury as defined in this Policy.

(Doc. # 25-6). Mr. Hughes's estate requested that Defendant pay both accidental death benefits, but Defendant refused. In response, counsel for Mr. Hughes's estate sent a letter to Defendant demanding payment, but again Defendant refused. Plaintiff, as administratrix of Mr. Hughes's estate, then filed suit in Kenton Circuit Court, which was removed to this Court by Defendant.

## II. ANALYSIS

### 1. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, it must produce evidence showing that a genuine issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record as a whole, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### 2. Reviewing and Interpreting Terms of an Insurance Contract

The Kentucky Supreme Court recently reiterated the general rule that "the construction and legal effect of an insurance contract is a matter of law for the court." *State Farm Mut. Auto. Ins. Co. v. Slusher*, 325 S.W.3d 318, 322 (Ky. 2010) (citing

4

*Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992)). If the language of the contract is not ambiguous, the ordinary meaning of the words chosen by the insurer are to be followed. *Id.* However, any ambiguities must be liberally construed so as to resolve all doubts in favor of the insured's reasonable expectations and construed as an average person would construe them. *Id.*; *Kininmonth v. Kentucky Farm Bureau Mut. Ins. Co.*, No. 2008-CA-002339-MR, 2009 WL 3878115, at *2 (Ky. Nov. 20, 2009). "Exceptions and exclusions in insurance policies are to be narrowly construed to effectuate insurance coverage." *Kininmonth*, 2009 WL 3878115, at *2. But "[r]easonable conditions, restrictions, and limitations on insurance coverage are not deemed *per se* to be contrary to public policy." *Snow v. West American Ins. Co.*, 161 S.W.3d 338, 341 (Ky. App. 2004).

    **3.    Defendant Properly Denied Benefits under the Accidental Death Benefit Rider to the Whole Life Policy**

Mr. Hughes owned a $5000 whole life policy and $5000 accidental death benefit rider issued by Defendant. The policy excluded coverage if the insured's death resulted "directly or indirectly, wholly or partially, from . . . the intentional act of another; . . . ." Defendant contends that the police intentionally tased Mr. Hughes, which partially caused Mr. Hughes's death, meaning that the exclusion applies. Plaintiff, on the other hand, contends that the police did not intentionally kill Mr. Hughes, and the policy exclusion applies only when the other person acted with the intent to cause death. The issue therefore boils down to a simple question: does the word "intentionally" modify the act requirement, or does "intentionally" modify the consequence?

As the Kentucky Supreme Court holds, contract interpretation and the legal effect of a written instrument are matters of law that must be decided by the court. *State Farm*,

325 S.W.3d at 322; *Morganfield*, 856 S.W.2d at 895. This Court must determine whether the policy exclusion is ambiguous, and if it is not, the Court must give terms their plain meaning as written by the insurer. *See State Farm*, 325 S.W.3d at 322. Here, the policy states that "no death benefit for Accidental Death is payable if death results directly or indirectly, wholly or partially, from . . . the intentional act of another." This policy only has one possible meaning; if the insured's death is the result, in whole or in part, of the intentional act of another, accidental death benefits will not be paid. This term is unambiguous, and it is entirely unreasonable to construe the term to mean that the person must have had the intent to kill the insured.

Defendant properly declined to provide accidental death benefits under the whole life policy. Although the parties contest most of the facts surrounding Mr. Hughes's death, they do not contest the two most significant and material facts. First, the police made a conscious decision to deploy the Taser against Mr. Hughes, indicating that their actions were intentional.[1] There are no facts to suggest that the Taser was negligently or mistakenly fired. Second, both parties agree that Mr. Hughes's death was caused at least in part by the electric shock from the Taser. Defendant relied on the medical examiner's report that stated, "[d]eath, in my judgment, is due to . . . the use of the stun device[], [which] suggests that the death could be assigned to the excited delirium syndrome." Plaintiff's expert, in partial agreement, stated, "death was caused by repeated simultaneous and cumulative electric shocks delivered by multiple Taser devices." As a

---

[1] The parties disagree about the reason why police deployed the Taser. Plaintiff argues that police were unwarranted in deploying the Taser. Defendant argues that police deployed the Taser in response to a perceived threat presented by Mr. Hughes. The reason is immaterial; it is only material whether the action was intentional.

result, there is absolutely no dispute between the parties that the police intentionally tased Mr. Hughes. Nor do they dispute that the police officer's act, at least in part, was the cause of Mr. Hughes's death. Therefore, the "intentional act" exclusion applies and Defendant properly declined to pay benefits under the whole life policy.

4. **Defendant Properly Denied Benefits Under the Accidental Death Benefit Policy**

Mr. Hughes owned a $30,000 Accidental Death Benefit policy issued by Defendant. When Mr. Hughes passed away, Defendant declined requests by Mr. Hughes's estate to pay benefits under the policy. Defendant maintains that two policy exclusions apply and that its denial was proper.

The policy states, "[Defendant] will pay NO Accidental Death Benefit or Common Carrier Benefit for any Accidental Injury or any loss caused or resulting in whole or in part by . . . (d) the Insured Person's engaging in an illegal activity or occupation; . . . ." This term is not ambiguous, and must be given its ordinary meaning. *See State Farm,* 325 S.W.3d at 322. "Illegal activity" can only mean an act or series of acts that violate a penal code. Plaintiff quibbles with differentiating "illegal activity" from "illegal act." However, her argument is merely an attempt to create an ambiguity where one does not otherwise exist.

Applying the "illegal activity" exclusion to the facts, Defendant properly denied paying benefits. KRS § 527.020 makes it a crime if a person "carries concealed a firearm or other deadly weapon on or about his or her person" unless the individual is licensed to do so or is within a specified category of individuals that may permissibly carry a concealed weapon without a license. At the time of his death, Mr. Hughes was carrying a Ruger 9mm without a license. Plaintiff argues that Mr. Hughes was not in violation of KRS § 527.020

7

because he was only carrying the firearm so that he could return it to its rightful owner. This is not a defense. Kentucky courts recognize two affirmative defenses to this statute, neither of which are applicable here.[2] Therefore, Mr. Hughes was in violation of the statute at the time of his death and engaged in an "illegal activity."

The exclusion also requires that the Insured's death must be "caused or resulting in whole or in part by" the illegal activity. Police responded to a report that an individual was carrying a weapon while walking down a public street. After identifying Mr. Hughes as the suspect, police deployed a Taser against him, which led, at least in part, to Mr. Hughes's death. Therefore, Mr. Hughes's death resulted, at least in part, because of his illegal action, meaning that Defendant properly declined to pay benefits pursuant to the "illegal activity" exclusion.

### III. CONCLUSION

For all of these reasons, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 25) be, and is hereby, **GRANTED**.

This 24th day of October, 2011.



Signed By:
*David L. Bunning* DB
**United States District Judge**

G:\DATA\Opinions\Covington\2010\2-10-10 MOO.wpd

---

[2] In *Smith v. Commonwealth*, 230 S.W.2d 478, 479 (Ky. 1950), the Kentucky Court of Appeals, the Commonwealth's highest court at the time, held that the defendant may allege as an affirmative defense that he or she is within the excepted class. Additionally, in *Mosley v. Commonwealth*, 374 S.W.2d 492, 493 (Ky. 1964), the Commonwealth's Court of Appeals upheld its prior ruling that a defendant may prove as an affirmative defense that the firearm was inoperable such that it could not be fired.